**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| SMART MOBILE TECHNOLOGIES LLC,<br><br>    Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>    Defendant. | Case No. 6:21-cv-00603-ADA-DTG |
| SMART MOBILE TECHNOLOGIES LLC,<br><br>    Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., and<br>SAMSUNG ELECTRONICS AMERICA,<br>INC.,<br><br>    Defendants. | Case No. 6:21-cv-00701-ADA-DTG |

**PLAINTIFF'S SUR-REPLY CLAIM CONSTRUCTION BRIEF
REGARDING THE '501 PATENT FAMILY**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 1

    A.    "server" ('653 (4, 15, 27, 28); '946 (1, 4, 15, 17, 27, 28, 29, 30); 075 (1); '168 (2, 4 19, 20, 28, 29, 34); '501 (1, 13, 16); '936 (1, 9, 11, 19); '937 (1, 13, 16); '739 (1, 13, 16); '863 (1, 4, 5, 6, 11, 14, 19, 24); '119 (20); '083 (6, 8); '943 (6)) .......................................................................................... 1

    B.    "functional instruction" ('501 (1); '936 (1, 13, 20); '937 (1); '739 (1); '119 (20)) .................................................................................................................. 3

    C.    "functional instructions [including instructions] for use in providing a plurality of functions to the [wireless/mobile] device . . ." ('501 (1); '936 (1); '937 (1); '739 (1); '119 (20)) ........................................................... 3

    D.    "switching between one or more networks ..." ('501 (1); '936 (1); '937 (1); '739 (1); '119 (20)) ................................................................................ 4

    E.    "the server serves as a primary repository or exchange to deliver various functions to the wireless device" ('501 (1); '739 (1)) ............................... 5

    F.    "the server serves ... to deliver various functions to the wireless device" ('501 (1); '739 (1)) / "the server is configured to send to the wireless device a plurality of functions" ('936 (1)) / "the server provides a plurality of functions for control of the mobile device" ('937 (1)) ...................................... 7

    G.    "dynamic / dynamically" ('434 (1); '501 (1, 2); '936 (1); '937 (2); '739 (1, 2); '863 (4); '168 (2, 4)) ...................................................................... 8

    H.    "wherein the server enables dynamic conversion of the wireless device from a first function to a second function to provide a plurality of functions at the wireless device" ('501 (1); '739 (1)) / "wherein the wireless device is dynamically configurable from a first function to a second function to enable a plurality of functions at the wireless device" ('936 (1)) / "wherein the server provides a plurality of functions for control of the mobile device and enables conversion of the mobile device from as first function to a second function to provide a plurality of functions at the mobile device" ('937 (1)) / "wherein the server enables conversion of the mobile device from a first function to a second function by providing a plurality of functions to the mobile device" ('119 (20)) ............... 9

    I.    "first function" / "second function" / "plurality of functions at (to) the wireless device" ('501 (1); '936 (1); '937 (1); '739 (1); '119 (20)) .................... 10

    J.    "application" ('501 (17); '739 (17); '168 (2, 4, 5, 19, 22)) ................................ 10

    K.    "wherein a private network includes a wireless local area network (WLAN) for use in a home or office" ('501 (18); '739 (18)) ............................... 10

L.      "the prioritization includes data based on GPS or wireless local area network (WLAN)" ('937 (18)) ................................................................... 11

M.      "A mobile device communication system ..." ('119 (20)) ..................................... 12

N.      "the wireless device transmitter and receiver are independently tunable to one or more frequencies" ('168 (2)) ....................................................... 13

O.      "one or more primary values and subsidiary values" ('168 (2, 4)) ...................... 14

P.      "the software is associated with a user and the device stored in a profile" ('168 (4)) ....................................................................................................... 15

Q.      "the remote server stores in memory software for a wireless device" ('168 (2)) / "the server is configured to store software for a plurality of wireless devices" ('168 (4)) ................................................................................. 16

R.      "wherein responsive to a request from the one or more wireless device to a website or URL associated with a website server or a network environment, the one or more wireless device receives an indicator of a software application to be downloaded from the remote server" ('168 (19)) ....... 16

S.      "more precise location" (168 (21)) ........................................................................ 17

III.    CONCLUSION .................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

### CASES

*3M Innovative Props. Co. v. Tredegar Corp.*,
   725 F.3d 1315 (Fed. Cir. 2013) ......................................................................... 10

*Clare v. Chrysler Group LLC*,
   819 F.3d 1323 (Fed. Cir. 2016) ........................................................................... 7

*Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*,
   838 F.3d 1224 (Fed. Cir. 2016) ..................................................................... 3, 14

*Digital Retail Apps, Inc. v. H-E-B, LP*,
   No. 6-19-cv-00167-ADA, 2020 WL 376664 (W.D. Tex. Jan. 23, 2020) ................................ 15

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
   946 F.3d 1367 (Fed. Cir. 2020) ......................................................................... 13

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*,
   435 F.3d 1366 (Fed. Cir. 2006) ..................................................................... 11, 15

*Georgetown Rail Equip. Co. v. Holland L.P.*,
   867 F.3d 1229 (Fed. Cir. 2017) ......................................................................... 12

*Hoffer v. Microsoft Corp.*,
   405 F.3d 1326 (Fed. Cir. 2005) ......................................................................... 13

*Intellectual Ventures II LLC v. BITCO General Ins. Corp.*,
   6:15-cv-59, 2016 WL 125594 (E.D. Tex. Jan. 11, 2016) ............................................... 17

*Mastermine Software, Inc. v. Microsoft Corp.*,
   874 F.3d 1307 (Fed. Cir. 2017) ........................................................................... 7

*Maxell, Ltd. v. Amperex Tech. Ltd.*,
   21-cv-00347-ADA, 2022 WL 16858824 (W.D. Tex. Nov. 10, 2022) .................................. 12

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.*,
   520 F.3d 1367 (Fed. Cir. 2008) ........................................................................... 8

*O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) ........................................................................... 1

*Omega Eng'g, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003) ......................................................................... 10

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.*,
   35 F.4th 1367 (Fed. Cir. 2022) ........................................................................... 5

*SkinMedica, Inc. v. Histogen Inc.*,
   727 F.3d 1187 (Fed. Cir. 2013) ........................................................................... 6

*United States v. Jackson*,
   426 F.3d 301 (5th Cir. 2005) ......................................................................... 11, 12

## I.    INTRODUCTION

Smart Mobile previously explained why Defendants had failed to prove by clear and convincing evidence that eleven of nineteen disputed terms are indefinite. Defendants' Reply Brief does not remedy those shortcomings. Defendants' arguments as to the remaining terms misinterpret the claim language, the specification, or both. For the reasons stated in Smart Mobile's opening brief and discussed further below, the Court should adopt Smart Mobile's constructions and reject Defendants' claim construction and indefiniteness arguments.

## II.    ARGUMENT

### A.    "server" ('653 (4, 15, 27, 28); '946 (1, 4, 15, 17, 27, 28, 29, 30); 075 (1); '168 (2, 4 19, 20, 28, 29, 34); '501 (1, 13, 16); '936 (1, 9, 11, 19); '937 (1, 13, 16); '739 (1, 13, 16); '863 (1, 4, 5, 6, 11, 14, 19, 24); '119 (20); '083 (6, 8); '943 (6))

Defendants say Smart Mobile lacks "evidence" "for why 'server' should be construed to encompass a 'program.'" Dkt. #80 at 1.[1] Wrong. Smart Mobile cited the IEEE dictionary, which defines "server" as including "the software component on one device that provides services for use by clients." Dkt. #68-10 at 1031. Defendants do not explain how "software component" and "program" differ here. Defendants also point out that the IEEE has another definition, phrased in terms of "a device or computer system." Dkt. #80 at 1. Smart Mobile's construction is consistent with both definitions. That Defendants advance one and reject the other underscores Smart Mobile's original point: Defendants' "plain and ordinary meaning" construction would be unhelpful for a jury. It is a cloak behind which Defendants hide an actual but unstated construction. The Court should guide the jury and eliminate such mischief by adopting Smart Mobile's construction. *See O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("A determination that a claim term … has the 'plain and ordinary meaning' may be

---

[1] Defendants filed an identical brief and exhibits in each of 6:21-cv-00603 and 6:21-cv-00701. Citations herein to Defendants' submissions are to the filings in 6:21-cv-00603.

inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute.").

Defendants next contend that Smart Mobile "fails to justify its proposition that a 'server' can be a 'collection of computing devices or programs.'" Dkt. #80 at 1. Wrong again. "A server" means one or more servers. *See* Dkt. #67 at 2. Moreover, the IEEE defines "server" as including "a device or computer system." Dkt. #68-10 at 1031. So, a server could be "system," which is a collection of devices or programs working together. Dkt. #68-1, ¶ 34. Another dictionary says that a "server" may have "multiple brains" and "large arrays" of storage units, Dkt. #48-38 at 640, a description that is equally or more consistent with a collection of devices as compared to a single device. Once again, Smart Mobile's construction is consistent with both possibilities. Defendant's citation to Smart Mobile's preliminary response in IPR2022-00807 is inapposite. As Smart Mobile there contended, the Baker reference's "lookup service 136" is not a "server" because Baker taught that—in the particular Jini network system disclosed in Baker—the former was not part of the latter. *See* Dkt. #81-3 at 8 ("[T]he fact that Baker is Jini technology indicates that the POSITA would understand that the lookup service in Baker is a different and separate part of the Jini network system from the server or servers in the system.").

Finally, Defendants characterize as "unsupported" Smart Mobile's proposal that a server provides "resources, data, or programs" or "enables access to a network or network resources." Dkt. #80 at 2. To the contrary, Smart Mobile identified supporting portions of the specification as well as extrinsic evidence. *See* Dkt. #67 at 3; Dkt. #68-1, ¶ 35. Defendants do not address this evidence. Nor do they explain why it would be appropriate for them to present defenses to the jury predicated on a hidden construction of "server"—styled innocuously as the "plain and ordinary meaning"—that is inconsistent with both the intrinsic and extrinsic evidence.

**B.    "functional instruction" ('501 (1); '936 (1, 13, 20); '937 (1); '739 (1); '119 (20))**

Rather than proposing a construction, Defendants argue indefiniteness. Defendants must prove, by clear and convincing evidence, that the claims with this term, "'read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'" *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1231 (Fed. Cir. 2016) (citation omitted). Defendant's indefiniteness complaint boils down to the contention that "functional instructions" must be something other than software. *See* Dkt. #80 at 2. But the specification equates "'functional instruction sets' (FIS) and *software (S/W)* 218," "FIS and *software* 218," "functional instruction sets 218," "FIS 218," "FIS 218 (*function instruction software*)," "functional instruction set 218," "FIS 218 instructions," and "FIS." *See* Dkt. #67 at 4 (emphasis added). The specification discloses that the "functional instructions" may be stored, downloaded and uploaded, and processed by a processor, *see id.*, which are all characteristics of software. This evidence provides reasonable certainty that "functional instructions" are software. *See* Dkt. #67 at 3-5; Dkt. #68-1, ¶¶ 37-40.

**C.    "functional instructions [including instructions] for use in providing a plurality of functions to the [wireless/mobile] device . . ." ('501 (1); '936 (1); '937 (1); '739 (1); '119 (20))**

Defendants' critique of Smart Mobile's arguments is largely nonsensical. Defendants first complain that "SMT's suggestion that the network switching functional instructions is a subset of the functional instructions that provide a plurality of 'functions' is unsupported by the claim language." Dkt. #80 at 3. To the contrary, the claims state that "at least one of the functional instructions [is] for switching between one or more networks including at least one public network." Dkt. #48-2 at 9:27-31. Defendants then accuse Smart Mobile of "mischaracterizing" the specification, but the portions of the specification they cite teach that communicating via a public carrier network and communicating via a private network are different functions, and that

3

functional instructions stored in the wireless device enable the device to switch between them. *E.g.*, Dkt. #48-2 at 4:13-15; 7:50-53. There has been no mischaracterization.

Defendants then attempt to rephrase claim 5 as providing that the wireless device "can 'be' one of many different types of devices, including a TV remote, that control home appliances." Dkt. #80 at 3. But claim 5 actually recites "[t]he system of claim 1, wherein the wireless device is adapted to control home intelligent appliances …." *See* Dkt. #48-2 at 10:4-5. Regardless, Defendants identify nothing in the specification supporting their nonsensical argument that the disputed term means "functional instructions [including instructions] for use in providing a plurality of [types of mobile/wireless devices] to the [wireless/mobile] device ...." Dkt. #47 at 7. Even Defendants' expert does not support this argument. *See* Dkt. #48-1.

### D.    "switching between one or more networks ..." ('501 (1); '936 (1); '937 (1); '739 (1); '119 (20))

Defendants have not proven indefiniteness. They agree that the Court can correct an error in claim drafting, Dkt. #80 at 3-4, but they argue that correction is unavailable here. Defendants first say there is reasonable debate because the specification supposedly discloses an "unexplained type of switching associated with a single network, i.e., the local office loop." Dkt. #80 at 4. The disclosure they cite is not relevant because it concerns the device "switch[ing] itself for optimal performance" in a network, Dkt. #48-2 at 4:39-42, 5:1-4, not "switching *between ... networks*."

Defendants then argue that Smart Mobile's proposal, that the term means switching between "multiple" (two or more) networks, is not "free from reasonable debate" because "[t]he specification … discusses switching between three networks …." Dkt. #80 at 4. But "three" qualifies as "multiple," so Defendants' argument makes no sense.

Defendants next assert that the drafting error "was present in an original claim set … and retained over years of subsequent amendments and prosecution of multiple, related patents."

Dkt. #80 at 4. But the relevant question is whether the prosecution history "suggest[s] a different interpretation." *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 35 F.4th 1367, 1373 (Fed. Cir. 2022). That the error may be old and was not previously identified do not alone "suggest a different interpretation" than what Smart Mobile proposes. Even if it were otherwise, Defendants do not say what that "different interpretation" should be.

Finally, Defendants argue that Smart Mobile's proposal "does not simply restate the claim's plain meaning; it fundamentally changes the claim's plain meaning." Dkt. #80 at 4. Wrong. The claim terms "switching," "between," and "networks" (a plural term)—together with the specification's disclosures of switching between multiple networks, *e.g.*, Dkt. #48-2 at 3:5-7, 4:11-12, 6:61-65, 7:49-53—reveal the claim drafter's intent to claim switching between multiple networks. Smart Mobile's proposal clarifies but does not change the plain meaning.

### E.    "the server serves as a primary repository or exchange to deliver various functions to the wireless device" ('501 (1); '739 (1))

Defendants' construction requires the server to store "all" instructions "belonging to the wireless device." Dkt. #47 at 10. They pluck "all" from one dictionary, ignoring its absence from others. *See* Dkt. #48-40 at 68. More importantly, Defendant's construction contradicts the claim language, which says the server is a "primary" rather than exclusive repository, and that the wireless device's memory "stores functional instructions including instructions for use in providing a plurality of functions to the wireless device." Dkt. #48-2 at 9:27-29; Dkt. #48-5 at 9:32-34. The claim language thus makes clear that not "all" instructions are stored at the server. Dkt. #68-1, ¶ 55. Defendants counter that "SMT fails to appreciate that a server … storing 'all' software does not exclude the wireless device from also storing some software," Dkt. #80 at 6, but it is Defendants who fail to appreciate that "all" means "all," not merely "some."

5

In response to Smart Mobile's argument that their construction would exclude a second preferred embodiment, *see* Dkt. #67 at 9-10, Defendants argue that there is no such embodiment because the specification discloses that instructions stored on the device "are for the capability to *decide when* to switch modes, … not the capability to actually achieve mode reconfiguration." Dkt. #80 at 6. (emphasis in original). Defendants misrepresent the specification. The cited passage states that the "*switching* may be … per specific functional instruction sets 218 and preferences stored … in the CT/MD 202 itself." Dkt. #48-2 at 7:50-53 (emphasis added). Thus, the instructions are for the capability to "switch," not merely to "decide when to switch."

Defendants say "SMT incorrectly argues that the claims do not recite 'uploading' and so this word in Defendants' proposal is inappropriate." Dkt. #80 at 6. But the claims indisputably do not contain the word "uploading." They recite a one-way transfer of functions: "deliver[y] … to" the device. Dkt. #48-2 at 9:36. Even if "exchange" were understood to contemplate a two-way transfer of functions, "uploading" would not be required because the claimed server need only serve as a "repository *or* exchange." *E.g.*, *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187 (Fed. Cir. 2013) ("The disjunctive 'or' plainly designates that a series describes alternatives.").

Defendants fault Smart Mobile for "address[ing] a disclaimer argument that Defendants never made." Dkt. #80 at 6. Not true. Defendants originally argued that "[t]he examiner issued double patenting rejections … and the applicant proceeded to amend the 'server' claim limitation of the applications that issued as the '501, '936, and '937 patents to overcome those rejections." Dkt. #47 at 13. But as Smart Mobile correctly pointed out, Defendants mischaracterize the prosecution history. Dkt. #67 at 11-12. What actually happened is the applicant overcame the statutory double-patenting rejections by adding limitations that had nothing to do with the "server." *Id.* This does not evidence a "clear disavowal of claim scope" as to the "server" limitation.

Finally, Defendants assert that Smart Mobile "proposes to construe this term the same as two differently-worded terms from related patents." Dkt. #80 at 5. But Smart Mobile's construction for the '501 and '739 patents is not the same as for the '936, and '937 patents. *See* Dkt. #67 at 8-9, 12. And even if it were, giving the same construction to nonidentical limitations in related patents can be appropriate if consistent with the shared specification. *See Clare v. Chrysler Group LLC*, 819 F.3d 1323, 1330 (Fed. Cir. 2016). Such is the case here.

## F.    "the server serves ... to deliver various functions to the wireless device" ('501 (1); '739 (1)) / "the server is configured to send to the wireless device a plurality of functions" ('936 (1)) / "the server provides a plurality of functions for control of the mobile device" ('937 (1))

Defendants assert that their construction "captures that the claimed server can 'deliver,' 'send,' or 'provide' information to a mobile device." Dkt. #80 at 7. But their construction actually entails the server "deliver[ing]," "send[ing]," or "provid[ing]" "types of mobile/wireless devices" to the wireless/mobile device. Dkt. #47 at 13. "Types of ... devices" are physical objects, not "information." Defendant's construction is nonsensical and unsupported. In contrast, Smart Mobile's construction is faithful to the specification, which describes how the server transmits software to the wireless device that enables it to have various capabilities. *See* Dkt. #67 at 12-13.

Defendants next complain that Smart Mobile's construction replaces "deliver," "send," and "provides" with "transmit," Dkt. #80 at 7. But they do not explain how these terms are materially different. Smart Mobile's construction is faithful to the patents and simplifies matters for the jury.

Defendants also complain that Smart Mobile "would replace a verb (i.e., 'provides'), with a capability (i.e., 'configured to transmit')." Dkt. #80 at 7. Smart Mobile's construction is consistent with the Federal Circuit's approach to system claims that include functional language. *E.g.*, *Mastermine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1315 (Fed. Cir. 2017)

("Though claim 8 includes active verbs—presents, receives, and generates—these verbs represent permissible functional language used to describe capabilities of the 'reporting module.'").

Finally, Defendants' efforts to distinguish *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367 (Fed. Cir. 2008) are unpersuasive. *Nautilus* does not conflict with that case's holding that the appropriate meaning of each use of a claim term should be determined "from each occurrence in context," particularly when a "uniform construction" would result in a "nonsensical reading." *Id.* at 1376. Here, even Defendants concede that the term "function" means different things depending upon the context in which it is used in the claims. *Compare* Dkt. #47 at 10 ("functional instruction sets and software") *with id.* at 17 ("set of capabilities").

## G.    "dynamic / dynamically" ('434 (1); '501 (1, 2); '936 (1); '937 (2); '739 (1, 2); '863 (4); '168 (2, 4))

Defendants have not proven that the claims with this term are indefinite. Smart Mobile's construction is consistent with, and supported by, both intrinsic and extrinsic evidence. *See* Dkt. #67 at 13-15. Defendants continue to ignore that evidence. Defendants instead highlight the PTAB's Decision granting *inter partes* review in IPR2022-00808 ('501 patent), but that evidence undercuts Defendants' indefiniteness argument. First, the PTAB had no trouble construing "dynamic," expressing no concern about indefiniteness.[2] Dkt. #81-6 at 9-12. Second, the PTAB's Decision reveals that Defendants are talking out of both sides of their mouth. They told the PTAB that "dynamic" should be given an unspecified "plain and ordinary meaning," Dkt. #81-6 at 9,

---

[2] The PTAB agreed with Smart Mobile that the meaning of "dynamic" includes "when and as needed." Dkt. #81-6 at 10. And although not incorporated into its construction, the PTAB also agreed that "a change is 'dynamic' when it occurs responsive to variable environmental or other conditions." *Id.* Although the PTAB did not incorporate "without the need for user intervention," it did incorporate a similar concept, "in real time." *Id.* In any event, the PTAB was clear that its claim construction was "[b]ased on the present record," which included no expert testimony from Smart Mobile. *Id.* at 12. The PTAB "encourage[d] the parties to provide a full record on meaning of 'dynamic conversion,'" *id.*, thereby suggesting that its construction could change.

while telling this Court that there is no such meaning because the patent "provide[s] no guidance," Dkt. #47 at 15-16, and so a POSITA could not figure out what "dynamic" means, Dkt. #48-1, ¶ 35.

**H.    "wherein the server enables dynamic conversion of the wireless device from a first function to a second function to provide a plurality of functions at the wireless device" ('501 (1); '739 (1)) / "wherein the wireless device is dynamically configurable from a first function to a second function to enable a plurality of functions at the wireless device" ('936 (1)) / "wherein the server provides a plurality of functions for control of the mobile device and enables conversion of the mobile device from as first function to a second function to provide a plurality of functions at the mobile device" ('937 (1)) / "wherein the server enables conversion of the mobile device from a first function to a second function by providing a plurality of functions to the mobile device" ('119 (20))**

Defendants' constructions of these terms are consistent with neither the claim language nor the specification. Defendants say "conversion" requires "transformation" of the device "from a first type of wireless device with a first set of capabilities to a second type of wireless device with a different, second set of capabilities." Dkt. #47 at 47. But the claim language is clear about what "conversion" actually means: the device switches from one function to another function while retaining a "plurality of functions." This is consistent with the specification, which discloses that the device can switch its "operating state" "without losing the full feature functionality." *See* Dkt. #67 at 16-17. The device is not "transformed" to a different "type" of device. In a footnote, Defendants now say that "[a] physical transformation is not required," Dkt. #80 at 9 n.8, but their construction still requires "transformation," which is bound to confuse the jury.

Defendants' constructions are also problematic because they are premised upon the contention that the server "provides" "a plurality of types of mobile/wireless devices" to the wireless device. Dkt. #47 at 17. For the reasons explained above and in prior briefing, this assertion is non-sensical. The server provides software, not "types of … devices," to the wireless device.

Finally, Defendants' reliance upon the prosecution history is misplaced, for reasons already explained. See Dkt. #67 at 17-18. The applicant's quoted comment about Levac was directed to

the fact that the Levac device did not convert or switch between functions or capabilities. *See* Dkt. #48-20 at 1145. Applicant's comments are consistent with the claims as written, which recite that the device converts or reconfigures from one function to another. This prosecution history neither requires nor supports Defendants' proposed re-write. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003) ("[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable."); *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013) (explaining that, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable").

### I. "first function" / "second function" / "plurality of functions at (to) the wireless device" ('501 (1); '936 (1); '937 (1); '739 (1); '119 (20))

These terms are discussed above in sections F and H. *See also* Dkt. #67 at 12-13, 16-18.

### J. "application" ('501 (17); '739 (17); '168 (2, 4, 5, 19, 22))

Defendants agree with Smart Mobile's proposed construction of "application" for the '168 patent's claims 5, 19, 22, and the asserted claims of the '434, '653, '863, '291, and '946 patents. *See* Dkt. #80 at 10. Smart Mobile agrees with Defendants that "application" as used in claim 17 of the '501 patent, claim 17 of the '739 patent, and in claims 2 and 4 of the '168 patent, is appropriately construed as "use, role, or task." There are no remaining disputes as to this term.

### K. "wherein a private network includes a wireless local area network (WLAN) for use in a home or office" ('501 (18); '739 (18))

Defendants have not proven indefiniteness. Defendants argued lack of antecedent basis because "the claims never recite a 'private network' in the first place." Dkt. #47 at 23. Smart Mobile responded not by "admit[ting that] this dependent claim term lacks antecedent basis," Dkt. #80 at 11, but rather by noting that "'antecedent basis can be present by implication.'" Dkt. #67 at 21 (quoting *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370

(Fed. Cir. 2006)). Regardless, "[w]hen the meaning of the claim would reasonably be understood by persons of ordinary skill when read in light of the specification, the claim is not subject to invalidity upon departure from the protocol of 'antecedent basis.'" *Energizer Holdings*, 435 F.3d at 1370. Defendants argued that these claims cannot be understood because "the recited 'private network' bears no discernable relationship to the rest of the claim." Dkt. #47 at 23 Smart Mobile responded not with an "untimely" "new proffered construction," Dkt. #80 at 11, but rather with an explanation, supported by evidence, as to why such a relationship would be "discernable" by a POSITA, *see* Dkt. #67 at 20-21; Dkt. #68-1, ¶¶ 81-83. Contrary to Defendants' assertions, Smart Mobile does not ask the Court to "correct" or "redraft" the claim, but rather to adopt the plain meaning to a POSITA. *See* Dkt. #67 at 20-21.

### L. "the prioritization includes data based on GPS or wireless local area network (WLAN)" ('937 (18))

Defendants have not proven indefiniteness. Defendants' "initial" argument was lack of antecedent basis. *See* Dkt. #47 at 24 n.13. Smart Mobile responded that antecedent basis may be present by implication, and in any event a claim is not invalid as indefinite due to lack of antecedent basis when the meaning of the claim would reasonably be understood by persons of ordinary skill when read in light of the specification. Dkt. #67 at 22. Here, a POSITA would understand that "the prioritization" in dependent claim 18 refers to the "prioritization data" recited in independent claim 1. *See* Dkt. #68-1, ¶ 85. So claim 18 is not indefinite.

Defendants now respond with a different invalidity argument: that the specification purportedly does not "explain how to implement any prioritization" based on GPS or wireless local area network. Dkt. #80 at 12. The Court should ignore this argument, for two reasons. First, it appears for the first time in Defendants' reply brief. *E.g.*, *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief ... are waived.").

Second, purported lack of enablement is not an indefiniteness argument. *See Maxell, Ltd. v. Amperex Tech. Ltd.*, 21-cv-00347-ADA, 2022 WL 16858824, *24 (W.D. Tex. Nov. 10, 2022) (noting that enablement arguments had "[no]thing to do with indefiniteness").

Finally, Defendants argue that "the specification does not describe any 'prioritization' based on signal strength." Dkt. #80 at 12. To the contrary, as Smart Mobile explained, and substantiated with expert testimony, a POSITA would understand the specification to disclose how signal strength (which may vary according to the location of the wireless device) bears on the device's prioritization of networks. *See* Dkt. #67 at 22-23; Dkt. #68-1, ¶¶ 84-86.

**M.    "A mobile device communication system ..." ('119 (20))**

This disputed claim language is a preamble. Defendants say "[a] preamble may be limiting (1) where "it recites essential structure or steps," (2) where it "is essential to understand limitations or terms in the claim body," or (3) where it "recit[es] additional structure or steps underscored as important by the specification." Dkt. #47 at 25 (quoting *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1236 (Fed. Cir. 2017)). Defendants and their expert pretend that "server" appears in the preamble, Dkt. #80 at 12; Dkt. #48-1, ¶ 43, but it does not. "System" appears, but Defendants do not argue that the patentee defined "system" to include a server. Defendants suggest that a "server" was "material to patentability," Dkt. #80 at 13, but they point to no evidence. Because "server" is not in the preamble, and because "system" need not necessarily include a server, the preamble does not render a "server" "essential" or "important" to the claimed system.

Although Defendants' original argument was that this claim requires a "server" because "the preamble is limiting," Dkt. #47 at 24-26, they now say that the "server" is part of the claimed "system" regardless of the preamble. Dkt. #80 at 13 n.12. The Court should reject this. As a threshold matter, Defendants waived the argument by not presenting it earlier. *E.g.*, *Jackson*, 426 F.3d at 304 n.2. Indeed, they originally conceded that the "server" was *not* clearly part of the

claimed system. *See* Dkt. #47 at 24 (citing a purported "ambiguity in the claim language"). Beyond

that, although the claim references "a server" and discloses that the mobile device stores protocols

for "communication" with the server, the server is not part of the claimed "system" any more than,

for example, the recited "first wireless network." *See* Dkt. #48-10 at 10:40-65. Defendants now

say otherwise because "essential claim requirements" require a "structural home." Dkt. #80 at 13

(citing *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1329 (Fed. Cir. 2005)). But the purportedly

"essential" features Defendants point to are those of the server, not the mobile device or other

component of the system. The "server" is not necessary for the claimed "system" to be complete.

*See* Dkt. #67 at 23-24; Dkt. #68-1, ¶¶ 87-90. It is recited only as a "reference point" to provide

context for the claimed "system." *Cf. Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946

F.3d 1367, 1376-77 (Fed. Cir. 2020) ("To the extent that claim 8 mentions a beverage brewer, it

is only as a 'reference point' to define the purpose and structure of the brewing device.").

### N.    "the wireless device transmitter and receiver are independently tunable to one or more frequencies" ('168 (2))

Defendants posited three "possible" constructions of this term, two of which require the

transmitter and receiver tuning to be "independent" from some "external influence." Dkt. #47 at

26-27; Dkt. #48-1, ¶¶ 49-50. Defendants concede that the patent does not support the latter two.

*See* Dkt. 47 at 27 (noting that the patent provides "no guidance for identifying what that external

influence might be"). The third possibility, which is Smart Mobile's construction, is that the

transmitter and receiver each may be tuned to one or more frequencies, which frequencies need

not be the same. *See* Dkt. #67 at 24-25. This is supported by the specification, which discloses that

the wireless device can function in a local network that "can operate at the *same or a different*

*frequency*" for transmission and reception. Dkt. #48-15 at 4:25-29 (emphasis added); *see also*

Dkt. #68-1, ¶ 93. Smart Mobile's construction, which is how a POSITA would understand the

term, *see* Dkt. #68-1, ¶¶ 91-95, thus answers the two questions Defendants say this limitation raises: "(a) what tuning must be independent" and "(b) what that tuning must be independent from." Dkt. #47 at 26.

Defendants say Smart Mobile "offers no evidence" that the claims use "transmitter" and "receiver" to "collectively include one or more" of each. Dkt. #80 at 14. But that is not true: Smart Mobile proffered expert testimony. *See* Dkt. #67 at 25; Dkt. #68-1, ¶ 95. In fact, it is Defendants who failed to present evidence: their expert is silent on the issue. *See* Dkt. #48-1, ¶¶ 48-50.

**O.    "one or more primary values and subsidiary values" ('168 (2, 4))**

Defendants have not proven that the claim with this term is indefinite. Defendants quibble about perceived inconsistencies in the specification regarding the term "mode." Dkt. #80 at 14. Smart Mobile and its expert provided a detailed explanation regarding how the specification uses "mode," including in Figure 4 and the associated text. *See* Dkt. #67 at 26-28, Dkt. #68-1, ¶¶ 96-103. Defendants ignore it, throw up their hands, and proclaim the patent "entirely unclear." Dkt. #80 at 14. Defendants then point out that the specification states that when T/R blocks are set "to primary frequency Fp," the mobile device is converted to "local office mode 230," even though the "*primary* frequency Fp corresponds to the *secondary* network (public) in the requested mode—not the primary network (office)." Dkt. #80 at 15. So Defendants have identified a typographical error in the specification: the order of "$F_P$" and "$F_L$" at Dkt. #48-15 col. 6:3-4 is reversed. The error is obvious, particularly in view of Figure 4, which correctly associates frequencies $F_P$ with the primary network (public) in the "current" priority and frequencies $F_L$ with the primary network (office) in the "requested" priority. Indefiniteness must be proven by clear and convincing evidence that the claims, read in light of the specification, fail to provide persons skilled in the art with reasonable certainty about the scope of the invention. *See Cox Commc'ns*, 838 F.3d at 1231. Minor inconsistencies and obvious typographical errors in a specification are insufficient to render

claims indefinite. *E.g.*, *Digital Retail Apps, Inc. v. H-E-B, LP*, No. 6-19-cv-00167-ADA, 2020 WL 376664, *3 n.1 (W.D. Tex. Jan. 23, 2020).

### P.    "the software is associated with a user and the device stored in a profile" ('168 (4))

Defendants have not proven indefiniteness. In response to Defendants' argument that "the software" lacks antecedent basis, Dkt. #47 at 30, Smart Mobile noted that the only recitation of software (as a noun) in claim 4 is in the immediately following limitation directed to software stored in a server, Dkt. #48-15 at 10:43-44. A POSITA would understand the two limitations to be referring to the same "software." Dkt. #68-1, ¶ 106. Even if conventional antecedent basis is lacking here, the claim is still valid because its meaning is reasonably understandable by persons of ordinary skill. *See Energizer Holdings*, 435 F.3d at 1370.

Defendants observe that Smart Mobile "asserts that information 'about a user and device' must be stored in a profile. But that is not what the claim states." Dkt. #80 at 15. However, a person ordinarily skilled in the art, let alone a lay person, would understand that the claim is not describing storage of a user and the device in a profile, but rather storage of *information*, about a user and the device, in a profile. *Cf. Digital Retail Apps*, 2020 WL 376664, *3 n.1. That understanding is consistent with the specification, which describes storage of user and device information. *See* Dkt. #68-1, ¶¶ 105, 107. Defendants suggest that it might be "software" rather than information that is stored, *see* Dkt. #80 at 15, but their own expert concedes that "the sentence structure of the claim as written does not suggest that" interpretation, which also finds no support in the specification, Dkt. #48-1, ¶ 58.

Defendants also argue that the specification does not "shed light on what must be stored in a profile." Dkt. #80 at 15. But the claim as understood by a POSITA answers this question: information about a user and the device is stored in a profile.

**Q. "the remote server stores in memory software for a wireless device" ('168 (2)) / "the server is configured to store software for a plurality of wireless devices" ('168 (4))**

Although Defendants purport to advocate for "plain and ordinary meaning" here, they actually propose something else: "for" should be construed as "on behalf of," "such that the software is linked to a particular wireless device." Dkt. #47 at 31. Tellingly, their expert does not subscribe to this theory. *See* Dkt. #48-1. Defendants highlight that claim 2 in one limitation recites "for use by" but the limitation at issue recites "for." Defendants argue that these terms modify the verb "store," but the more natural reading is that they modify the noun "software." In any event, Defendants do not persuasively explain why the different phrasing supports reading a non-existent "on behalf of" limitation into claim 2, let alone claim 4, which does not even recite "for use by."

Defendants also argue that Smart Mobile's "argument does not square with claim 6, which recites a singular 'wireless device' throughout." Dkt. #80 at 16. But that is a non-sequitur; in addition to including numerous limitations not found in claims 2 or 4, claim 6 recites "a wireless device" whereas each of claims 2 and 4 recites a "plurality of wireless devices." *Compare* Dkt. #48-15 at 11:2 *with id.* at 9:63 and 10:44. So the claims are materially different.

Finally, as Smart Mobile previously argued, the Court should reject Defendants' proposed construction because it would exclude a preferred embodiment. *See* Dkt. #67 at 31. Defendants' response that there is no such embodiment is faulty, as explained above. *See supra*, Section II.E.

**R. "wherein responsive to a request from the one or more wireless device to a website or URL associated with a website server or a network environment, the one or more wireless device receives an indicator of a software application to be downloaded from the remote server" ('168 (19))**

Although Defendants continue to press demonstrably wrong arguments, they have not proven indefiniteness. They again argue that "a POSITA would not be reasonably certain which devices from claim 2 must make the 'request,'" Dkt. #80 at 17, but such specificity is not required.

16

*See Intellectual Ventures II LLC v. BITCO General Ins. Corp.*, 6:15-cv-59, 2016 WL 125594, at *14-16 (E.D. Tex. Jan. 11, 2016). A POSITA would understand that each wireless device that makes a "request" "receives an indicator." Dkt. #68-1, ¶¶ 112-14.

Defendants also originally argued lack of antecedent basis, *see* Dkt. #47 at 34-35, but they seemingly have abandoned that argument. And for good reason: as discussed in earlier briefing, antecedent basis for "one or more" is found in independent claim 2, from which claim 19 depends. *See* Dkt. #67 at 32-33; Dkt. #68-1, ¶ 115.

### S. "more precise location" (168 (21))

Defendants have not proven indefiniteness. Defendants do not seriously contest that a POSITA would understand "location" to refer to the device's location. They attempt to set up a contradiction between the claim and Samsung's product literature, *see* Dkt. #80 at 17, but there is no such contradiction: Samsung's literature reveals that its devices use both GPS and Wi-Fi information to determine location. *See* Dkt. #81-8 ("Your device may use a combination of Wi-Fi, GPS, and mobile networks to determine your location …."). Samsung devices do this because using both is more accurate than using either alone. Likewise, Apple's product literature, cited in Smart Mobile's infringement contention, states that Apple devices use "GPS and Bluetooth (where they're available), along with crowd-sourced Wi-Fi hotspots and cellular towers to determine the approximate location of [the] device." Exs. 1018, 1019. Apple devices use GPS "where [it's] available," along with Wi-Fi, because the combination is more accurate than using either alone.

## III. CONCLUSION

For the reasons discussed above and in prior briefing, the Court should construe the disputed claims as proposed by Smart Mobile and should reject Defendants' claim construction and indefiniteness arguments.

Dated: November 30, 2022                     Respectfully submitted,

                                             */s/ Philip J. Graves*
                                             Philip J. Graves *(Pro Hac Vice)*
                                             CA State Bar No. 153441
                                             Greer N. Shaw *(Pro Hac Vice)*
                                             CA State Bar No. 197960
                                             **GRAVES & SHAW LLP**
                                             355 S. Grand Ave., Suite 2450
                                             Los Angeles, CA 90071
                                             Telephone: (213) 204-5101
                                             Email: pgraves@gravesshaw.com
                                             Email: gshaw@gravesshaw.com

                                             **STECKLER WAYNE CHERRY & LOVE, PLLC**
                                             8416 Old McGregor Road
                                             Waco, Texas 76712
                                             Telephone: (254) 651-3690
                                             Facsimile: (254) 651-3689
                                             Craig D. Cherry (State Bar No. 24012419)
                                             Email: craig@swclaw.com
                                             Mark D. Siegmund (State Bar No. 24117055)
                                             Email: mark@swclaw.com

                                             Paul J. Skiermont (TX Bar No. 24033073)
                                             pskiermont@skiermontderby.com
                                             Steven J. Udick (TX Bar No. 24079884)
                                             sudick@skiermontderby.com
                                             Todd A. Martin (TX Bar No. 24066556)
                                             tmartin@skiermontderby.com
                                             **SKIERMONT DERBY LLP**
                                             1601 Elm Street, Suite 4400
                                             Dallas, TX 75201
                                             Phone: (214) 978-6600
                                             Fax: (214) 978-6601

                                             Rex Hwang (CA Bar No. 221079)
                                             rhwang@skiermontderby.com
                                             **SKIERMONT DERBY LLP**
                                             633 W. Fifth Street, Suite 5800
                                             Los Angeles, CA 90071
                                             Phone: (213) 788-4500
                                             Fax: (213) 788-4545

                                             **COUNSEL FOR PLAINTIFF**
                                             **SMART MOBILE TECHNOLOGIES LLC**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 30th day of November 2022, with a copy of this document via the Court's CM/Dkt. system per Local Rule CV-5(a). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first-class mail on this same date.

*/s/ Philip J. Graves*
Philip J. Graves
